UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | | |
|---|---|---|
| VADA JEAN THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | 6:18-cv-079-JMH |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| NANCY A. BERRYHILL, ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY | ) | |
| | ) | |
| Defendant. | | |

\*\*\*

Plaintiff Vada Jean Thomas brings this matter under 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Acting Commissioner of Social Security. The Court, having reviewed the record and the cross motions for summary judgment filed by the parties, will **REVERSE** and **REMAND** the Commissioner's decision because for further explanation on the ALJ's finding related to whether the claimant met the criteria in listing 1.04. Otherwise, the ALJ's determination on listing 12.06 is supported by substantial evidence and Thomas has failed to demonstrate that she meets the criteria for listing 12.08.

### I. Standard for Determining Disability

Under the Social Security Act, a disability is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining disability, an Administrative Law Judge ("ALJ") uses a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform past relevant work; and, if necessary, Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.*; *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II. Procedural and Factual History

Thomas filed an application for disability insurance benefits (DIB) and supplemental security income (SSI) on June 21, 2013, alleging disability as of March 30, 2010. [TR 607-16]. Thomas alleged disability due to major depression, post-traumatic stress disorder, cervical disc disease, osteoarthritis, short-term memory loss, and very limited use of her left arm. [TR 629]. Thomas's claim was denied initially and upon review. [TR 466-69, 531-44].

## A. Relevant Medical Evidence

In 2012, Thomas was treated three times at Quantum Healthcare. [TR 722-31]. Physical examinations at Quantum revealed that Thomas suffered from back and shoulder pain, decreased range of motion, difficulty standing up after sitting and squatting, and a depressed mood. [*Id.*].

In 2013, Thomas was treated at the Little Flower Clinic for back pain and depression. [TR 758-63]. An x-ray of Thomas's back revealed narrowing of two vertebrae, which suggested that Thomas suffered from degenerative disc disease. [TR 747].

Plaintiff had two consultative exams with Dr. Barry Burchett, who diagnosed Thomas with chronic back, hip, and shoulder pain, and potential depression. [TR 739, 742, 749]. Additionally, Dr. William Rigby diagnosed Thomas with PTSD, panic disorder, and major depression. [TR 750-51, 754-55].

Moreover, state agency psychologist Laura Cutler, Ph.D., found that Thomas could understand, remember, and carry out simple detailed instructions, could sustain attention for extended two-hour segments for detailed tasks, could tolerate occasional contact with coworkers and supervisors in nonpublic settings, and could adapt to routine changes as needed. [TR 447]. The assessment of state agency psychologist Jermaine Robertson, Ph.D., was largely in accord with Dr. Cutler's assessment. [TR 486].

Thomas submitted two function reports and a pain questionnaire as part of her application for benefits. [TR 644-57, 674-82]. On the questionnaire, Thomas reported daily "sharp, burning, knifelike" pain in her back, hips, knees, left shoulder, and neck that began after a car accident in 2005. [TR 644-45]. Thomas reported difficulty with walking, travel, regular housework, and yard work, among other difficulties. [TR 646]. Thomas also reported difficulty with using her left arm and reported that she spent a significant amount of time sitting. [TR 647-48]. Thomas's second questionnaire contained similar information but emphasized Thomas's mental health issues and limitations. [TR 674-82].

In 2014, state agency physician Dr. Amanda Lange reviewed the record evidence and concluded that, while Thomas had exertional and postural limitations, she could occasionally lift and carry up to twenty pounds, could stand or walk with normal breaks for about six hours in an eight-hour workday, and could frequently stoop, kneel, crouch, and crawl. [TR 483]. Still, Dr. Lange noted that Thomas was limited in reaching to the left overhead. [*Id.*].

Moreover, Thomas received additional treatment from Quantum Healthcare in 2014. [TR 773, 776, 778, 781, 783]. On February 25, 2014, Thomas reported that her anxiety and depression were well controlled by using the prescription medication Lexapro. [TR 783]. In September 2014, Thomas reported that she slept well at

4

night and that she was still taking prescription medication Lexapro, but that she continued to have some shoulder pain. [TR 773].

In November 2014, Thomas had surgery on her left shoulder to remove a cyst and for rotator cuff repair. [Tr 791-847]. Post-surgery, Thomas reported that her pain was controlled and that her depression had improved. [TR 767]. Still, Thomas reported some continued left hip pain. [*Id.*].

In 2015, Thomas was assessed by Dr. Robert Hoskins, M.D., and Dr. Michele Amburgey, Ph.D., related to her disability claim. [TR 869-76, 890-95]. Dr. Hoskins reported that Thomas had a somewhat unsteady gait and had difficulty squatting, sitting, and standing from the chair in the office. [TR 894]. Additionally, Dr. Hoskins noted that Thomas had a strong limp after taking a few steps. [*Id.*]. As a result of his examination, Dr. Hoskins stated that he "[could not] think of a job that she could keep given the history. [*Id.*]. Similarly, Dr. Amburgey's assessment rated Thomas's ability to function as poor in several areas, including understanding and remembering detailed instructions, maintaining attention and concentration for extended periods, and performing at a consistent pace, among others. [TR 875].

### B. Hearing Before ALJ

After her claims were denied initially and were denied upon reconsideration, Thomas pursued her claims at an administrative

5

hearing before ALJ Roger L. Reynolds on September 28, 2015. [TR 383-411]. Thomas was represented by an attorney at the administrative hearing. At the hearing, Thomas testified that she had previously worked as a charge nurse. [TR 387]. Thomas testified that she was unable to work beginning in 2010 because she was experiencing a lot of pain and was having problems with her memory. [TR 388].

Additionally, Thomas testified that she underwent surgeries on her left shoulder in November 2014 and July 2015. [TR 390-91]. Thomas explained that the pain in her left shoulder had improved since her surgeries and that, although she still does not have much range of motion, she can raise her left arm over her head but cannot keep it elevated for an extended period. [TR 393].

Thomas also testified that she was involved in a serious car accident in 2005 that resulted in a broken neck and caused lower back problems. [TR 392]. Thomas explained that she took prescription medications Robaxin, Neurontin, and Percocet, in addition to ibuprofen. [*Id.*]. Furthermore, Thomas testified that she had pinched nerves in her hips that could cause her to be bedridden for three to four days due to back spasms and hip pain while walking. [TR 393]. Thomas testified that she had been treated with steroid injections in her hip that would dull the pain temporarily but that the last two injections had not relieved her hip pain. [*Id.*]. Additionally, Thomas reported that her C5

6

and C6 vertebrae are pressing on the nerve in her spine, causing neck pain. [TR 397].

Thomas also testified that she had seen a few psychiatrists and that she took Lexapro daily for depression. [TR 393-94]. Thomas also discussed mental health issues at the hearing, explaining that she had attempted to seek counseling for mental health issues. [TR 398]. Thomas also reported that she had a hard time getting along with others, got very nervous in public, and that sounds increased her anxiety. [TR 400]. Finally, Thomas reported that she struggled the last few years she worked with all the sounds made by health equipment and monitors at her workplace. [*Id.*].

The ALJ also asked Thomas about her daily and personal life. For instance, Thomas reported that she spends most of her time sitting in a chair at home reading or thinking. [TR 401]. She reported that her children are grown and have families but that she did have problems socializing with her family at times. [*Id.*]. Thomas testified that she did not leave her house often but that she did enjoy camping occasionally. [TR 402].

The ALJ agreed to hold the record open for thirty days in order to review an MRI of Thomas's hip. [TR 402-03]. Finally, Betty Lindsey Hale, a vocational expert, testified at the hearing. [TR 404].

### C. The ALJ's Decision and the Present Appeal

In January 2016, the ALJ issued a written decision in this matter. [TR 10-23]. The ALJ concluded that Thomas had severe physical and mental impairments, including, chronic neck pain, low back pain, left shoulder pain, degenerative disc disease, hip bursitis, major depressive disorder, PTSD, and anxiety disorder. [TR 13].

Still, the ALJ concluded that Thomas did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [TR 13-15]. Additionally, the ALJ concluded that Thomas had the residual functional capacity ("RFC") to perform a limited range of light work, with mental limitations. [TR 15]. Based on the testimony of the vocational expert, the ALJ concluded that Thomas could not perform her past relevant work, but that Thomas could perform three light, unskilled jobs existing in the national economy. [TR 21-22]. As a result, the ALJ concluded that Thomas was not disabled. [TR 22].

Subsequently, Thomas sought review of the ALJ's decision in this Court on March 15, 2018. [DE 2]. The parties have filed cross motions for summary judgment. [DE 11; DE 13]. As a result, this matter has been fully briefed and is ripe for review.

### III. Standard of Review

When reviewing the ALJ's decision, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec*, 693 F.3d 709, 713 (6th Cir. 2012). This Court determines only whether the ALJ's ruling is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court is to affirm the decision, provided it is supported by substantial evidence, even if this Court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Even so, the existence of substantial evidence supporting the Commissioner's decision cannot excuse failure of an ALJ to follow a mandatory regulation that "is intended to confer a procedural protection" for the claimant. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543, 546–47 (6th Cir. 2004). "To hold otherwise ... would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory." *Id.* at 546; *see also Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011) ("An ALJ's failure to

9

follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009))).

## IV. Analysis

Thomas raises two main challenges to the ALJ's decision in this appeal. First, Thomas argues that the ALJ erred in finding that she did not meet a listed impairment. Specifically, Thomas argues that there was substantial evidence to establish that her back condition was per se disabling under Listing 1.04(A) and 1.04(C). Additionally, Thomas contends that there was substantial evidence to demonstrate that she met Listings 12.06 and 12.08, which deal with anxiety and personality disorders. Second, Thomas argues that the ALJ erred in finding that she had the RFC to perform a limited range of light work.

### A. Additional Evidence

The Secretary argues that additional evidence submitted by Thomas after the ALJ's decision is inapplicable here because most of the additional evidence was already in the record and some of the evidence was from 2016 and 2017, after the ALJ's decision. [DE 13 at 5, Pg ID 996]. Still, the Court need not determine whether this evidence is applicable because it does not appear that Thomas relies on any of this additional information in the present appeal.

**B. ALJ's Determination on Listed Impairments**

Thomas argues that the ALJ erred in finding that she did not meet listings 1.04(A), 1.04(C), 12.06, and 12.08. [DE 11-1]. These listings are discussed below.

**(1) Listing 1.04 – Disorders of the Spine**

Listing 1.04 provides,

> **1.04 Disorders of the spine** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> OR
>
> . . .
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04 (emphasis in original).

At the third step in the sequential analysis, the ALJ stated that he had "considered the following listings and finds that, while the claimant's physical impairments are severe, the[y] do

11

not meet the listings: 1.00, 9.00 and 11.00." Fair enough, but the ALJ devotes the rest of his written decision at step three to discussion of listings 12.04 and 12.06. At bottom, the ALJ must provide some explanation of why he determined that Thomas failed to meet the criteria in listing 1.04. Otherwise, this Court is unable to engage in any meaningful review of the ALJ's decision.

Ultimately, this Court is unable to determine if the ALJ's decision on listing 1.04 is supported by substantial evidence because the ALJ cursorily stated that he did not find that claimant's physical impairments met listing 1.00. In fact, the ALJ did not even take the time to cite the specific subsections in listing 1.00 that he claims he considered. The law requires that the ALJ provide a discussion of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A). The ALJ must say something more than nothing to allow this Court to conduct meaningful review of the decision and findings. Seeing as the ALJ failed to provide any explanation for his finding related to listing 1.04, this case will be remanded to the Social Security Administration to allow the ALJ to conduct a thorough review of the relevant record evidence and then explain his findings.

### (2) Listing 12.06

The ALJ also found that the severity of Thomas's mental impairments, considered singly and in combination, did not meet the criteria of listings 12.06. Listing 12.06 deals with anxiety and obsessive-compulsive disorders. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06.

The ALJ's finding, the Thomas did not meet the criteria for listing 12.06, is supported by substantial evidence. Thomas seems to argue that she has an anxiety or obsessive-compulsive disorder that has a marked affect on her daily living, social interaction, and concentration. Still, while the ALJ noted that the claimant has some restrictions in activities or daily living, getting along with others, and with concentration, there is insufficient record evidence to demonstrate that Thomas had an anxiety disorder that had a marked impact on her daily life. [*See* TR 14].

As the ALJ noted, the consultative examiner engaged in conversation with Thomas about her career and work experience and noted that this social interaction was that of a competent adult. [*Id.*]. Furthermore, the ALJ noted that there are no objective psychological assessments reflecting short term memory loss. [*Id.*]. Finally, the ALJ observed that Thomas had not had prolonged treatment by a psychologist or psychiatrist, much less hospitalization for depression or anxiety disorders. [*Id.*].

Simply put, the record evidence does not support a finding that Thomas had any anxiety related issue that had a marked impact on her life. Thomas reported having mental health issues associated with childhood trauma and a serious car accident. Additionally, Thomas reported that she rarely left her home and that she got nervous in public around crowds. Still, during past medical examinations and hearings, Thomas reported that she slept well, interacted with her family occasionally, went camping, and could care for herself at home. As such, Thomas has failed to demonstrate that she meets the criteria for listing 12.06 and the ALJ's finding on listing 12.06 is supported by substantial evidence.

**(3) Listing 12.08**

For the first time on appeal, Thomas contends that the record evidence supports a finding that she meets the criteria of listings 12.08. Of course, the ALJ did not consider listing 12.08 because it was not raised below.

Still, Thomas has failed to specifically point to any objective evidence in the record that demonstrates that she meets the criteria in listing 12.08.

Listing 12.08 deals with personality and impulse-control disorders. To meet the listing, claimants must demonstrate that they have one or more of the requirements in section A and an extreme limitation of one or marked limitation of two of the

14

requirements in section B.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.08.

The record does not demonstrate any evidence that suggests that Thomas meets the section B criteria.  While Thomas reported some difficulty in getting along and interacting with others, there is no apparent evidence that Thomas has an extreme or marked limitation in interacting with others.  Thomas reported that she interacts with her family occasionally and her reasons for not leaving her home seem more related to anxiety than personality issues.  Additionally, while some evidence in the record suggests that Thomas had limited difficulties with concentration and maintaining pace, these limitations seem related, at least in part, to Thomas's physical limitations and pain.  Finally, there is no definitive evidence to suggest that Thomas had an extreme or marked limitation in understanding, remembering, or applying information or in adapting and managing herself.

In sum, Thomas has failed to explain, much less prove, how the record evidence demonstrates that she meets the criteria in listing 12.08.  Thomas failed to raise this argument below and, as a result, it was not considered by the ALJ.  Still, there is no apparent objective evidence in the record that demonstrates that Thomas meets the criteria in listing 12.08.

## C. RFC Determination

This Court cannot consider whether the ALJ's decision on residual functional capacity is supported by substantial evidence until the ALJ provides an explanation about the determination made on listing 1.04. Here, the Court has found that this case must be remanded to the Social Security Administration because the ALJ failed to explain his determination on whether the claimant met the criteria in listing 1.04. The ALJ's discussion and determination on this point may impact the finding on RFC. As a result, the Court will be able to engage in a more thorough and meaningful review of the ALJ's RFC determination once the ALJ has fully explained the impact, if any, of the claimant's spinal and back issues.

## V. Conclusion

The ALJ's determination on listing 12.06 is supported by substantial evidence and Thomas has failed to prove that she meets the criteria for listing 12.08. But, having found that the ALJ failed to adequately provide an explanation for his finding that Thomas did not meet the criteria in listing 1.04, the Acting Commissioner's final decision is **REVERSED** and this action is **REMANDED** for administrative proceedings consistent with this opinion. On remand, the ALJ shall consider the record evidence on claimant's spinal disorder and the impact, if any, of this evidence

on her residual functional capacity and disability claim generally.

Accordingly, it is hereby **ORDERED** as follows:

(1) The decision of the Commissioner is **REVERSED**, with this action **REMANDED**;

(2) Plaintiff's Motion for Summary Judgment [DE 11] is **DENIED**;

(3) Defendant's Motion for Summary Judgment [DE 13] is **GRANTED IN PART AND DENIED IN PART**; and

(4) This matter shall be **STRICKEN** from the Court's active docket.

This the 29th day of March, 2019.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge